2026 IL App (2d) 260219-U
No. 2-26-0219
Order filed August 5, 2026

**NOTICE:** This order was filed under Illinois Supreme Court Rule 23(b) and is not precedential except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee,

v.

NATHAN BECERRA, Defendant-Appellant.

Appeal from the Circuit Court of Kane County.
Honorable Julia K. Yetter & Donald J. Tegeler, Judges, Presiding.
No. 26-CF-919

JUSTICE HUTCHINSON delivered the judgment of the court.
Presiding Justice Kennedy and Justice Mullen concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The circuit court did not err in granting the State's petition to detain defendant prior to trial; defendant, a street gang member on parole, was found in possession of a loaded handgun, after having been adjudicated delinquent of four prior felony weapons offenses.

¶ 2    Defendant, Nathan Becerra, appeals from the circuit court's order granting the State's petition for pretrial detention after he was charged with multiple weapons offenses. The appellate defender declined to file additional memoranda on defendant's behalf and, after conducting an independent review of the record, we affirm the judgment of the circuit court.

¶ 3                                  I. BACKGROUND

¶ 4     At this stage, the evidence is only preliminary. For context, we note that defendant was born in September 2007, meaning he has not yet reached his nineteenth birthday.

¶ 5     At around 9:00 p.m. on April 16, 2026, two Aurora police detectives were on patrol near Bardwell Elementary School, driving what they described as a "semi-marked" squad car. The detectives noticed two young men, wearing hoodies, walking west on Bardwell Street. The detectives recognized one of the men as Jalen Alanis, a known member of the Latin Kings street gang in Aurora. Upon seeing the detectives' car, the other man (later identified as defendant) began to quickly walk away from both Alanis and the squad car.

¶ 6     One of the detectives caught up to defendant on foot. The detective shined his flashlight on defendant's face and "immediately recognized him." From prior interactions, the detective was familiar with defendant, his prior criminal history, his parole status, and his affiliation as a member of the Latin Kings street gang. The detective conducted a protective pat-down for weapons during which he "immediately felt" what he knew to be a pistol concealed near defendant's front waist. The detective handcuffed defendant for safety. After the detective's partner arrived, he removed the firearm from defendant's front hoodie pocket. The weapon was determined to be a black and tan 9-millimeter Sig Sauer P365 handgun. There were 12 rounds in the magazine and 1 in the chamber. At the time of the arrest, defendant was less than 1000 feet away from the elementary school.

¶ 7     Defendant was arrested and charged with multiple weapons offenses including: unlawful possession of a firearm by a street gang member (720 ILCS 5/24-1.8(a)(1) (West 2024)); unlawful possession of a firearm without a valid FOID card (430 ILCS 65/2(a)(1) (West 2024)); unlawful carrying or possession of a firearm within 1000 feet of a school (720 ILCS 5/24-1(a)(4) (West

2024)); aggravated unlawful use of a weapon by a person under the age of 21 (*id*. § 24-1.6(a)(2)); aggravated unlawful use of a weapon without a valid FOID card (*id*. § 24-1.6(a)(2)); two counts of aggravated unlawful possession of a loaded weapon on his person while not on private property (*id*.); and aggravated unlawful use of a loaded weapon without a concealed carry license (*id*.). For the purpose of our analysis, we note that because the weapon was loaded and contained ammunition when it was found, defendant is ineligible for probation on the most serious offense, the Class 2 felony of unlawful possession by a street gang member. See *id*. § 24-1.8(b).

¶ 8 After defendant's arrest, the State filed a verified petition to deny defendant's pre-trial release. At a hearing on the petition, the State recited the foregoing information surrounding defendant's arrest. The State also reported defendant's extensive juvenile criminal history, beginning when he was 16, and that he had been adjudicated delinquent in the following cases:

1) Feb. 27, 2024: Possession of a firearm by a street gang member (No. 24-JD-223)

2) Aug. 27, 2024: Possession of a firearm by a street gang member (No. 23-JD-315)

3) Aug. 27, 2024: Possession of a firearm by a street gang member (No. 24-JD-223)

4) Jul. 30, 2025: Possession of a stolen motor vehicle (No. 24-JD-332)

5) Jul. 30, 2025: Armed violence (No. 25-JD-40)

All of these offenses were Class 2 felonies, except for the adjudication for armed violence, which was a Class X felony. All of defendant's adjudications were negotiated guilty pleas. The State noted that defendant was a documented member of the Latin Kings street gang, and that he was on parole for armed violence at the time of the present offenses. In addition, the State indicated that defendant was in possession of a handgun for the offense charged as armed violence, making the present case "his fifth gun***."

¶ 9    In response, defense counsel proffered that defendant had been employed for "one to two months" and suggested that defendant was otherwise compliant with the terms of his parole, including therapy and substance-abuse treatment. Counsel observed that this was defendant's first charge as an adult. Defendant also recently learned he was going to be a father.

¶ 10    After hearing arguments, the circuit court (Judge Yetter) found that the State had proven by clear and convincing evidence that (1) defendant had committed a detainable offense, (2) defendant was a real and present threat to the community, and (3) that no condition or set of conditions would mitigate the real and present threat defendant posed. The court stated that it had considered the limitations of electronic home monitoring (EHM), namely that it "doesn't prevent the access to weapons." The court further found that even if less-restrictive conditions were available, defendant's criminal history and parole status "tells this [c]ourt that [defendant] is not going to follow conditions or orders *** that the [c]ourt imposes." The court entered a detailed written order summarizing its factual findings.

¶ 11    Subsequently, the defense filed a motion for relief. After the parties presented arguments, the circuit court (Judge Tegeler) reviewed defendant's criminal history and the facts of this case. The court stressed the fact that defendant was already on parole and yet again unlawfully found to be in possession of a loaded handgun. The court stated that there was "no way" it would trust defendant to comply with conditions of release. In the court's opinion, "detention is not only necessary but, in this case" it was "argu[ably]" "mandatory***." Defendant timely appealed and the circuit court appointed the appellate defender.

¶ 12                                    II. ANALYSIS

¶ 13    As noted, the appellate defender has declined to file a memorandum and elected to stand on the motion for relief. The State responds that defendant's detention was amply warranted by

- 4 -

clear and convincing evidence. The State points out that defendant's prior adjudications and parole status demonstrate his complete "disregard for criminal statutes, court orders, and any other authority seeking to prevent him from carrying and using loaded firearms" or "associating with other known gang members." We agree with the State.

¶ 14 Pursuant to 725 ILCS 5/110-6.1 (West 2024), the State may seek pretrial detention based on the defendant's dangerousness or risk of willful flight. Here, the State's petition to detain proceeded under the allegation of defendant's dangerousness, and the parties proceeded by way of proffer. Under the dangerousness standard, the State must prove by clear and convincing evidence that (1) "the proof is evident or the presumption great" that the defendant committed a detainable, non-probationable felony, (2) "the defendant poses a real and present threat to the safety of any person or persons or to the community," and (3) "no condition or combination of conditions" can mitigate that threat. *Id.* §§ 110-6.1(a)(1), (a)(4), (e). Because the parties proceeded solely by proffer, our review is *de novo*. *People v. Morgan*, 2020 IL 130626, ¶ 51.

¶ 15 After examining the record independently, we arrive at the same conclusion as the judges of the circuit court. First, defendant was charged with a non-probationable felony by virtue of being street gang member found with a loaded handgun in his possession. See 720 ILCS 5/24-1.8(b). We note, too, that there was absolutely no dispute before the circuit court regarding *either* defendant's gang membership (or Alanis's for that matter), *or* that the Latin Kings are a street gang. See generally *People v. Murray*, 2019 IL 123289, ¶ 53. Further, unlike instances with joint possessors, where the possession of contraband is attributed to more than one person when it is found in a room or in a vehicle, here, the handgun was found on defendant's person shortly after he was in the company of a (fellow) gang member. We also point out that defendant knowingly attempted to avoid the detectives, which tends to show consciousness of guilt. See *People v.*

*Turner*, 78 Ill. App. 3d 82, 94 (1979). It suffices to say, at this juncture, that the proof was evident or the presumption great that defendant committed a detainable offense.

¶ 16    Second, with respect to dangerousness, the court may consider a variety of factors in making its determination, which may include: the nature and circumstances of the charged offense; whether defendant was in possession of a weapon; the history and characteristics of the defendant; any prior convictions or juvenile adjudications; and the defendant's age and physical condition. 725 ILCS 5/110-6.1(g) (West 2024). Like the circuit court, we, too, find defendant's criminal history troubling. In less than three years, and before his 21st birthday, defendant has accumulated five felony delinquency adjudications, *four of which included the unlawful possession of a handgun*. Moreover, at the time of this offense, defendant was *on parole* for the Class X felony of armed violence. Few things could be more dangerous than a street gang member in unlawful possession of a loaded firearm, which is why the legislature made it a non-probationable offense. A person who *serially* violates that statute reveals himself to be dangerously unable to conform his conduct to the law. We agree with the circuit court that defendant is unquestionably a real and present threat to the community.

¶ 17    Finally, we also agree with the circuit court that no condition short of defendant's detention would mitigate the danger he presents. As the circuit court correctly pointed out, both EHM and GPS—the most restrictive conditions currently available to the court—would be insufficient to keep firearms out of defendant's hands while he is at home, or out in the community. See 730 ILCS 5/5-8A-4(A-1) (West 2024) (stating that pretrial home confinement is now limited to a maximum of five days per week). Any form of "electronic monitoring simply informs police that a defendant [has] violated his home-confinement restriction, but [it] does not provide much in the way of prevention" (emphasis and internal quotation marks omitted) (*People v. Reyes*, 2026 IL App (1st)

252639, ¶ 63), either when defendant is at home or in public. And even if there were suitable release conditions, there is no real prospect defendant would abide by them. We imagine that the standard conditions of defendant's parole included that he not associate with gang members and not commit any new offenses. Defendant, having failed those modest tasks, has given us no reason to think he would conform his behavior to any pretrial release conditions either. We hold that no less-restrictive pretrial conditions are appropriate for this defendant.

¶ 18                                          III. CONCLUSION

¶ 19     After reviewing the record, we determine that defendant's pretrial detention was warranted. Therefore, and for the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 20     Affirmed.